Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Judge Bumate and I welcome our colleague, Judge Bolton, who's sitting with us on assignment. Thank you so much for joining us. It's a pleasure to be here. And we all welcome you. Basically, a few housekeeping matters before we start. I'll call the cases in the order that they're on the calendar. And so I'll handle some submitted cases before we get to the cases that are on here for argument. When we get to the argument cases, you have a time designation by your case. And that time designation, both of the cases today have 15 minutes each. So if you are the appellant, that is your total time. So if you wish to reserve any time for rebuttal, it's your responsibility to keep track of the time. However, if you tell me aspirationally how much time you'd like to save, I'll try to remind you when I'm looking at the clock. Now, the clock goes down and then it goes up. And it doesn't mean I gave you extra time. It means you've moved into overtime. So expect to be kept to your time. It's my understanding on the first case that the parties are going to split their time and that Ms. Burns is going to take nine minutes and it's Ms. Carlson is going to take six. Is that correct? So just so when you're splitting time, we'll set the clock that way. If a judge is asking you questions when your time is up, please continue to answer the questions. And I won't count it against the other person. So if you're the second person and you're seeing that the judges are asking questions, you don't have to have a fit and feel like you have to pull the person down from the podium. I promise you, you will get your time as far as that goes. And for anyone that's here, as long as the judges are asking you questions, you may continue to answer them even if it has gone into overtime. Otherwise, expect to be kept to your time. So the first matter on calendar is Ming-Chi Bee v. Merrick Garland, 1-6-70329. That matter has been submitted on the briefs. It will be submitted as of this date. The next case is United States of America v. Russell McCloud, 21-16264. That case has been submitted on the briefs. It will be submitted as of this date. The next case is Alaska v. Merrick Garland, 22-1181. Submitted on the briefs. It will be submitted as of this date. Singh v. Merrick Garland, 22-745. Submitted on the briefs. It will be submitted as of this date. And then also Tule Lake Committee v. FAA, 20-16955. Submitted on the briefs. It will be submitted as of this date. So the first matter on for argument is Keishon Owens v. James Zarenda, case number 21-7039. Each side has 15 minutes. And as I said, for the appellant, that would be your total time, including any rebuttal time. And it's my understanding that we have 15 minutes of law students that are going to be arguing the case. And you have your supervisor here. Can you identify yourself? All right. Thank you. In the courtroom. And it's also my understanding that you're doing it as part of a clinic and a pro bono case. And so as we appreciate everyone that comes here, we like to always give special recognition to those individuals that are doing pro bono work for the court. Because it does help the court have, when people would otherwise be pro se, to have representation and help us decide difficult legal issues. So thank you both for being here. And thank you for doing the pro bono work. And we're ready to proceed then. Good morning. Good morning. Thank you, Your Honors. I'd like to thank the court for entertaining oral arguments. And I'd also like to thank the students at the University of St. Thomas Law School for volunteering their time and representing Mr. Owens. We are here to answer the straight forward... Do you want to save any time for rebuttal? As much time as I can have. Two minutes. All right. We're here to answer the straightforward question of whether the Nevada Department of Correction employees, NDOC employees, with no law or regulation-making authority may violate the Ex Post Facto Clause, which only prohibits the passing of retroactive laws. Before answering that question, the court, however, must first determine whether this court has jurisdiction over this appeal of the denial of an NDOC's motion to dismiss based on qualified immunity. Jurisdiction is based on defendants filing a timely notice of appeal of an order which finally and fully adjudicates an appealable issue such as qualified immunity. When making this determination, the United States Supreme Court in the Banker-Trux case counseled that the rules governing appeals should be interpreted to avoid the uncertainties that once plagued the determination of whether an appeal may be brought. Well, I think you, when you did your notice of appeal, you had a little footnote there and you, someone, obviously, before kind of gone, uh-oh, it looks like you said, you noticed that there was a minute order and then there was a transcript. So someone, is your best argument that it was ambiguous because? Not that it's ambiguous, but actually it's certain that the district court declared the transcript will be the opinion and order of the court. But subsequent to that, there was a very unequivocal order entered into the minutes that said the motion is denied. That was pretty unequivocal, pretty clear that you were denied your motion to dismiss. But it also said in that same minute order, the transcript will be the opinion and order of the court. It's clear in both the hearing and the transcript, which is the opinion and order of the court, and the minute order that is the opinion and order of the court. And let me go through kind of the principles that govern this. But couldn't you have just not ordered the transcript and then never had a final order and kind of just delayed indefinitely? You know, that's, Your Honor, I understand your frustration here. And it's our frustration, too. I think that, at the very least, this court should counsel district courts when ruling on orders that are subject to an immediate appeal, they should follow written order of the court. Well, you're raising your voice to a district court judge. So maybe you want to lower the temperature. I think she's pretty familiar with that. I'm sorry. That's probably what my biggest failing. I'm not raising the temperature, but naturally I'm a louder, boisterous person. And so I apologize, Your Honor. Can I ask a factual question? So the Nevada ordered the transcript, but the district court didn't just automatically order it? The court also ordered the transcript. Oh, it did? The court ordered the transcript. It was put on the record because once it was filed, which we didn't, you know, before it was even actually available for ordering. And once it was filed, we filed it within 30 days of that, of when it was filed or entered on the record. And that's the date you're appealing from is the date of entry. And again, I want to remind the court of the Ingram decision where the court's held, where there are two orders which may trigger the time for appeal. The party should not be penalized for choosing the wrong one. Accordingly, in Carter, this court instructed district courts must provide a clear signal of when an appealable order has been entered so that the party may timely appeal. With these principles in mind, the defendants timely filed their notice of appeal, and this court has jurisdiction. And I want to go through the elements of that, how we use it. Well, it occurs to me, you know, I always like to think that, you know, what's good for the goose is good for the gander. If this were the prisoner that had done this, would we give the prisoner the benefit of the doubt, and do you deserve the same benefit of the doubt? Well, you know, there is those principles of postage. Because I somehow feel that we would, if it were the prisoner, that we would say, okay, there's some ambiguity here, so we're going to give you the benefit of the doubt so that you have your appeal. And I think, Your Honor, that's a good point, because that's exactly what I think the court would do. And in this case, okay, prisoners and attorneys should be treated the same because it's not construing their opinions liberally, which is the rule that they have. But this is determining what is the jurisdictional appeal. If you've got a jurisdiction for prisoners, you can't say we don't have jurisdiction for other defendants. So that would seem to me that a prisoner would argue, well, I was confused, it was ambiguous. Didn't the district court say somewhere, well, no, I meant the minute order to be the final order? So it seems to me that you're only, the district court meant the minute order to be the final order. So it seems to me your only argument is it was ambiguous to you. It didn't seem to be ambiguous to the district court. Well, you know, Your Honor, I don't think the district court would consider this before while it was actually writing, saying this in the hearing. Well, I'm just kind of going through everything that's in the record, not just what people like to tell me. And I realize that, Your Honor. But the thing is, as Your Honor is well aware, that this is the court, you're the court that determines who has actually jurisdiction in this court. The district court may have an opinion on the matter, but that certainly doesn't bind this court as to what the opinion is. And when the district court said the transcript will be, will be, the opinion of the order of the court, they shouldn't go back and say, hey, some other order later on, after the time for appeal has run. Remember, when the district court's making this decision, they're doing it well after the time for the appeal has run. And second of all, they're doing it based on, you know, they're ruling on our motion for, to stay discovery in this matter. And if you go through the original order of the court, original transcript of the hearing, you can tell. The district court wants to have discovery in this matter. It wants to. Well, it seems, though, that the cases that you rely on, where the minute order indicated the district court would provide a written order or possible amended order, and that's not exactly what happened here. So what is your best case? Your Honor, I think it is the best case, is the Myers case, because it said where the minute order was not a final appealable order. It said it held the minute order, which is what we have here, a minute order, because the minute order did not clearly evidence the judge's intention that it would be the final act of the matter, but expressly stated that a following document would serve as the court's order. Here, the district court did not merely rule that a written order would follow, as in Myers, but identified. It went forth and said, it identified, it said, the transcript will be the hearing and order of the court. According, pursuant to Myers, the transcript, not the minute order, is the final order and opinion of the court. Let's go through this whole case. The minute order could not be the final order, because it's incomplete. For example, the minute order indicated the motion to dismiss is denied without prejudice. Well, Your Honor, that doesn't make any sense. You can't deny a motion to dismiss without prejudice. You don't get a second motion to dismiss. The rules don't provide for a second motion to dismiss. That's not possible. But if you go to the transcript, it makes clear the district court construed the motion to dismiss as a motion for summary judgment, and therefore was denying the motion for summary judgment without prejudice. What's there makes sense. And then if you look at it from my point of view, because I wasn't the counsel below. I'm appellate counsel, and I'm now reviewing the orders of the court to determine whether or not there's an appeal in this matter. If you look at that minute order, you'd say, hey, this isn't a final order. Even though it's illogical and you can't understand it, it's hard to understand what the minute order is saying, this appears to be a non-final order. But then when you go to the transcript, you can see. Let me ask you, does it make a difference to our analysis of the availability of an interlocutory appeal if the qualified immunity was dismissed pursuant to 12B6 or 56A? It doesn't make a difference as far as that both orders are appealable. I mean, both orders, you don't get just one bite of the apple. The United States Supreme Court, in the Barron's decision, held that, rejected any notion that a denial of motion of dismissal on qualified immunity was not final when the defendant could still seek summary judgment on qualified immunity grounds. So do you have, let's just say we say that this order is not timely and dismiss it. There's still a pending matter down below, correct? Do you get another bite at the apple of qualified immunity down below? Well, in a sense you do, Your Honor, but in a sense you don't. Because qualified immunity, as Your Honor well knows, is to avoid the burdens of litigation. Of going to trial. And so we're, not just trial, and so we lose out the part of qualified immunity that subjects us to discovery. But you do get to file a motion for summary judgment on qualified immunity after discovery. That's true, Your Honor. But like I said, but then we've already lost a major portion of what qualified immunity is for. But it's often the case for qualified immunity that it can't be decided on the original motion to dismiss and does have to await discovery, which is apparently what the district judge thought in this case. But in this case that's not the issue. Maybe I should turn to that right now because I'm running out of time. Now let's go to the substantive issue of qualified immunity. That to overcome qualified immunity, Owens bears the burden. Owens, not us, bears the burden that an official violated a statutory or constitutional right and that the right was clearly established at the time that the challenge was conducted. Counsel, can I get to my question on the merits? It seems like Owens made a factual allegation that the Nevada Department of Corrections retroactively applied Subsection 8. Is that a factual allegation that we have to follow? Well, they can't retroactively – okay. Even if they retroactively – I mean, they can't retroactively apply a statute. I mean, the – all they can do is interpret or misinterpret a statute, Your Honor. And if they are interpreting or misinterpreting a statute to apply it retroactively, then that would – that would not be a violation of the actual statute. Well, I'm – you know, I'm just asking as a factual matter. He says that you applied Subsection 8 versus Subsection 7b, right? And so the question, is that a factual matter that we have to construe in his favor and say that that happened, or is that a legal determination, or is that speculative? I think it's speculative because NDOC doesn't give us the option of retroactively applying statutes. If you go back to the Williams case, which is briefed probably extensively in the case, it's the Nevada Supreme Court who interprets – who interprets the subsection. And they did not retroactively apply any law. And that's – that's what actually happened in this case. No, I understand that. But couldn't – I mean, why isn't it possible that Nevada just said, well, they said we miscalculated 7b, so we're going to apply 8, Subsection 8? Well, they could, but that would be – As a factual matter, correct? That could have happened. Right. And if it did happen, all that would be is a misinterpretation of the statute. How is that possible? If you say we're going to calculate parole credits under Subsection 8, how is that – I mean, as a factual matter. That's exactly – Could that – you agree that that could happen as a factual matter, right? It could happen as a factual matter. Right. And so – and they're alleging that that happened here. And my question is, do we have to take that allegation as fact for purposes of the motion to dismiss? I think probably, yes, Your Honor. But it doesn't make any difference. But then how do you survive – then how do you get qualified immunity? Because that's clearly a violation of the ex post facto rule. No, it is not, Your Honor. That's not true at all. Okay. Because it's a misinterpretation of the statute. Right. It's a misinterpretation. Williams says that that was a misinterpretation of the statute. That's not what the statute says. Well, I think – I think you just got put in a corner here. I think when you said it could be a factual matter, then that's problematic for you to have qualified immunity for us to determine it at that point. And so now what I'm hearing you say coming out of your corner is that it was actually a legal error, not a factual determination. Well, I guess – I'm sorry. There is a limitation to what we can review on interlocutory appeal on summary judgment. And I'm sure you must be aware of that. You mean on a motion to dismiss, Your Honor? Yes. Well, the court said it was either 12b-6 or summary judgment, right? Right. But the thing is, is we're not here on the summary judgment issue. We're here on the motion to dismiss. Right. But the court – did the court construe it as a 56a-2? What did the court do on that? Well, it denied the motion to dismiss and then construed it and said, okay, well, I'm going to construe it as a motion of summary judgment. But that is a denial of the motion to dismiss, Your Honor. It has to be. If it isn't, then how do we proceed forward with the case? If there's no denial of the motion to dismiss, we can't proceed to the answer. We can't proceed any further with the case. The case just ends up stalling right there, Your Honor. Here the ex post facto clause says, no ex post facto law shall be passed. Under the express language, only the passing of a law or at very least a mandatory regulation is the case. And none of these defendants have any authority to pass a regulation or have much less a mandatory regulation or any other type of law. They cannot be held liable for violating the ex post facto clause because they lack the authority to pass any kind of law. You've got to remember, Your Honor, that this is only a violation if you pass a law. You can't violate the ex post facto clause by interpreting a law. You can't violate the ex post facto clause by misconstruing a law. And I think that goes down to the Carter case. This case was decided, Your Honor. You have 40 seconds left. Do you want to save any time for rebuttal? I've got to get this thing through, Your Honor. Well, then you're going to not have any time left. And then I guess I won't have any time for rebuttal. But the Carter case, Your Honor, specifically says, is specifically on point here. This Court already decided this issue. It said that NRS, the subsection 7, they would make the exact same argument that's made here. When screening the plaintiff, the Court — My problem is we don't get to the law if there's factual disputes. Are you saying there is a factual dispute of whether or not Nevada applied subsection 8 or not? Okay. Okay. Your Honor, I think we're misinterpreting what we mean. I think we're kind of cross-purposes of what a factual dispute is. Factual dispute is, you take the facts as they said it is, and then, as a matter of law, whether or not they could violate the ex post facto clause. And that's what we have here. Under whatever scenario of facts you take that's in the complaint, as a matter of law, we could not have violated the ex post facto clause. That's right. And, Your Honor, so I can't get to the issue of standing, but I would respectfully refer you to the brief and that you — All right. Let me make sure to either — if either of my colleagues have any additional questions. No. All right. Thank you. We've — your time has expired, then. Thank you, Your Honor. Thank you. All right. We're ready to hear from the appellee. Good morning. Good morning. May it please the Court, my name is Jessica Burns, and I am a certified law student representative with the University of St. Thomas Pro Bono Appellate Clinic. I, along with my co-counsel, Ms. Kelly Carlson, represent the appellee, Keyshawn Owens, in the present appeal. I will be speaking for nine minutes as to the appellate jurisdiction issue, and my co-counsel will speak for six minutes as to the ex post facto issue. This is a story of repeated failure. The failure of the appellants to properly apply Mr. Owens' good time credits to his minimum sentence for over a decade, costing him four years of his life. And their failure to correct this issue once confirmed. And their failure, even today, to properly apply Mr. Owens' good time credits based on the retroactive application of a statute. And the appellant's failure to ask the district court specifically to rule on the issue of qualified immunity based on the pleadings alone. Appellant's appeal is untimely, not as the result of a final decision issued by the district court, and goes outside the circumscribed scope of interlocutory appeal and must be dismissed for lack of appellate jurisdiction. Let's talk about that. The minute order references the hearing transcript as, quote, the order of the court, unquote, making it at best ambiguous as to the finality of the minute order. Doesn't that weigh in favor of finding the appeal timely? And I did also raise, I'm struggling with the fact that if it were your client that had made this mistake, that we would cut you a break, why wouldn't they be entitled to the same because it's ambiguous? Well, first, Your Honor, to your first question about whether or not it's ambiguous, if the district court's order was ambiguous, then it is upon the appellant and it's their burden to prove to this court that it is not ambiguous and that, in fact, they made a proper reading of the district court's order. And secondly, to the extent that a prisoner would have maybe a lower burden to prove that ambiguity, in the Bowles v. Russell case decided by the Supreme Court, jurisdiction was found to be a jurisdictional requirement or filing timely within those days from when the appellate clock began to run. And that case involved a prisoner who filed an untimely appeal before the court. Thus, the ambiguity would weigh not in favor of the appellants in this case. So you think if it were your client that had done the same thing, if you were, that we should find that it was timely, but they're out of luck because they're the government? No, Your Honor. I don't think it simply turns on which party is having the issue with timeliness. However, I do believe, based on the precedent, that it would weigh in favor of the party who could establish that it was not ambiguous. And as the court has said, the case of Meyer does not support the appellant's contention that the district court order said anything about making the order conditional on a later filing. And as the court also mentioned, this kind of rule that would allow a party to wait for a transcript when it is upon the appellants, it's their duty to order the transcript, they could effectively toll the date on when they wanted to file their appeal as long as that transcript was not filed. Isn't that the problem? Because the district court said that the transcript of the hearing shall serve as the order of the court. So that's the district court's fault, not the appellant's fault. Your Honor, the case law that supports the idea that there may be a later document that could toll that date does not support appellant's opinion that anything in the district court's order made that later filing of the transcript conditional on anything that happened before. The contents would not have been changed. Well, wasn't the condition that the transcript be filed? I mean, it says the transcript of this hearing shall serve as the written opinion and order of the court. So isn't that conditional, that something in the future will happen? Your Honor, what would be making it conditional would be stating that, for example, in Nationwide, that the court may amend or amplify their order, or in the case of Meyer, that a written order would follow. However, a transcript, a very... Well, hypothetically, at the hearing, say that the district court just said, I'm not going to give you my reasons, but I'm going to deny the order. Files this minute order and says, I'm going to give you my reasons and a written order to follow. You know, it's not conditional. The decision has been made, but no one has any idea why the district court ruled the way it would. And so how is an appellant supposed to know if they can appeal it or not? Well, Your Honor, the appellants could have asked the district court when that appellate clock began to run. But additionally, if this decision was considered to be unfinal, then appellants then failed the second question that this court directed parties to answer, which is whether or not a decision that did not discuss qualified immunity could be final. And under 28 U.S.C. section 1291, court of appeals can review final judgments after a district court renders them. However, on interlocutory appeal, there is a very narrow and circumscribed scope that courts may review a district court order, which, as the court has already noted, is whether or not a factual dispute exists that cannot be reviewed on interlocutory appeal. The only issue that can be reviewed is the abstract legal question. And that's stated in the Cohen Supreme Court case, the Mitchell v. Forsyth case, this court's George v. Morris case. Factual disputes cannot be reviewed on interlocutory appeal. But let's assume that... Are you... I didn't quite understand the designation between the two of you. Are you prepared to talk about whether there's a constitutional violation if we talk about this? Your Honor, I would reserve those specific questions for my co-counsel, who will answer them more directly. However, the appellants are misleading the court in stating that the Subsection 7B is purely a legal issue. They are disputing that it didn't even happen, that their client did not apply that subsection, and that is a factual... Well, it's just, I guess, having been a former trial judge and dealt with good time credits and dealt with the Department of Corrections and all of it, you probably couldn't make it more complicated than it actually appears to be. And it just looks like, in this case, that you're asking to make it a constitutional violation if someone miscalculates good time credits. And it's my understanding that you rest your interpretation largely on the Williams case that requires recalculated good time credits from expired sentence to be applied to active sentences. And I don't know how that position can be reconciled with footnote 7 saying, no relief can be granted for expired sentences. And when Williams came out and made this clear, the sentence was already expired. Well, Your Honor, my co-counsel will speak to this more directly. However, the appellees do not rest their case on the Williams decision. The appellants do, and that's where this becomes confusing. The factual dispute is not whether or not there was a misinterpretation. Mr. Owens is alleging there was a retroactive application of a subsequently enacted statute, which, by the very nature of ex post facto, is a violation. Thus, the allegations must be taken, as Mr. Owens has alleged in his complaint. Right. So that was my question for your colleagues. So Owens is alleging that the Department of Corrections applied subsection 8 retroactively as a factual matter. Yes, that's correct, Your Honor. But how — I mean, I didn't — I guess you used the pro se below. So — but I was looking at the complaint. It doesn't actually say that. It just seemed — or how — there's no factual allegation of that. Is there? Your Honor, in — Precisely. Yes, Your Honor. In Mr. Owens' complaint, he does state that this was not a misinterpretation of subsection 7b. It was an application of subsection 8 as he committed his crimes on June 12th of 2007. And the amendment to the statute happened after. It happened on June 30th, 2007. Okay. So then how do you respond to your opposing counsel's argument that, well, even if we assume that fact as true, given that — in constraining light of Mr. Owens, that this — we still do have interlocutory appeal jurisdiction because, as a legal matter, they fail? Your Honor, in the appellant's appeal, nowhere do they state that they are arguing that this is a — based on subsection 8. They never clearly address subsection 8. They just decide to say that it simply didn't happen, which, in the Johnson v. Jones case, is exactly what the court said they could not review on interlocutory appeal. If they had framed their appeal in stating that, even if subsection 8 was retroactively applied, it is not ex post facto, then the court could review whether that was clearly established. You're saying they didn't brief it that way. Yes, Your Honor, that's correct. And under the Maropolos case and Estate v. Marsh, the court found that when the appellants fail to properly allege in their appeal the argument that whether or not it was clearly established, the court will not go backwards and rewrite their appeal and consider things that they had not raised. Thus, because their appeal is untimely, goes beyond the circumscribed scope of interlocutory appeal, and is not as the result of a final decision on the facts as alleged by Mr. Owens, this appeal must be dismissed for lack of appellate jurisdiction. Thank you for your argument. Good morning. May it please the court, my name is Kelly Carlson. I am also a certified law student representative here on behalf of Mr. Owens, and as my co-counsel, Ms. Burns, indicated, I will be addressing the merits of Mr. Owens' ex post facto claim and qualified immunity. This case is on all fours with the Supreme Court's decisions in Lentz and Weaver. In Lentz and Weaver, prison officials retroactively applied a new statute on good time credits, which deprived prisoners of the opportunity for an earlier parole hearing. Now, the Supreme Court found that this was an ex post facto violation, and in his complaint, Mr. Owens has made this exact argument. He has accused Nevada prison officials of retroactively applying subsection 8 of Nevada statute 209.4465 in their calculation of his good time credits. Now, the Supreme Court already found this to be an ex post facto violation, and in fact, defendants themselves never suggested applying subsection 8 when... that in this case, getting more credits is to your client's benefit as opposed to an ex post facto that takes away good time credits. Does it matter? The Supreme Court cases that you're citing, were they taking away good time credits? Yes, Your Honor, they were. So isn't that distinguish it from this situation where they get more good time credits? Your Honor, he is not getting more good time credits. He is losing good time credits. Oh, oh, I see. No, but the amendment gives them more good time credits. The interpretation of the amendment gives him more good time credits, right? So, Your Honor, I think the central question would be what harm is being suffered, and the harm that's being suffered is that he is losing the opportunity for an earlier parole hearing. Well, okay, but if Williams is the one that makes it absolutely clear as to how this has to be applied, his first sentence was already done, right? Yes, Your Honor. And so then he doesn't get the benefit of it, according to Williams, right? Your Honor, so... But you're relying on some unpublished opinions that you say should have made it clear to the Department of Corrections that they should be calculating it differently. Is that correct? So not only that, yes. We do state that the defendants have been on notice since the June 2015 von Seydewitz decision and the later 2017 Williams decision that their interpretation of subsection 7b was wrong. But furthermore, there is nothing in the Williams decision which supports this retroactive confiscation of those 1,440 good time credits. As you noted... He did get those credits against his sentence that resulted in his sentence expiring a long time before, if he hadn't got it. This only has to do with his earlier eligibility for a parole hearing. So this has to do with the credits that he lost on that first sentence, which they said were expired because he had already finished that sentence. But it also has to do... Mr. Owens has alleged that the defendants are continuing to apply subsection 8 and that even today he is still not receiving his 20 good time credits. So this harm is ongoing. But speaking to those 1,440 credits from the first sentence, there is nothing to say that those should be expired. As you noted, what the defendants cited... But didn't he get those credits against his actual minimum sentence and it expired 1,440 days sooner than if it had been a flat time? He did not, Your Honor. Because he had already finished that sentence, they did not give him those 1,440 credits. He was 10 months into his second sentence and they did recalculate those. And so he received some benefit of those credits. So in the second sentence, they recalculated under 7B, correct? Yes, Your Honor. But I thought you just said that the harm is still ongoing. Yes. There was a temporary correction. They fixed it for those 10 months. However, then going forward after that, they continued to then apply subsection 8, not subsection 7B. To his second current sentence? To his second sentence as well as the sentences that he is currently serving. So you're saying that the Nevada Department of Corrections is still saying that you don't get early consideration of parole if you're serving a minimum sentence or serving a sentence for the certain crimes that were eliminated from that in June of 2007, a few weeks after he committed his crimes? Yes, Your Honor. That is what Mr. Owens has alleged, that they are continuing to apply subsection 8 and that they are still failing to accurately calculate the 20 good time credits that he would be entitled to under subsection 7B. That's not right. I guess I misunderstood. I thought what you're saying is that they misapplied subsection. In the first sentence, they didn't apply. They applied subsection. They misinterpreted subsection 7B and they should have carried forward that credit to the current section, current sentence. So, Your Honor, it's unclear on the first sentence whether they were applying a misinterpretation of subsection 7B or subsection 8. But going forward, now that they are on very clear notice that their misinterpretation of subsection 7B is wrong, the only explanation for why they would still be failing to give him these credits is that they are not applying subsection 7B but that they are applying these later enacted subsection 8, which would not make Mr. Owens eligible for those credits. So you're saying he's not getting credits today? Yes, Your Honor. That is what Mr. Owens has alleged. That's what I wanted to clarify. What you're telling us is based on his allegations, which we must assume to be true. Yes, Your Honor. The reality is we don't know how the Nevada Department of Corrections is doing its calculations. That is exactly right. That is why we need discovery because our record is very sparse. We need more information as to how Mr. Owens is getting his credits, who is calculating them, and by what measure. But discovery wasn't stayed, so I would have thought some discovery has gone on. Your Honor, I see I'm at my time. Can I answer? Well, you can answer my question. Okay. Yes, Your Honor. So discovery was stayed, but it has resumed now. As far as we are aware, obviously none of this is in the record, there has not been any actual discovery request, but Mr. Owens has received an attorney at the trial level, and initial investigations actually show that the retroactive application is much worse than we thought and that they may be applying a later enacted subsection 9 to Mr. Owens as well. If there are no further questions. Any additional questions? No. All right. Thank you for your argument. Thank you both for your argument. This matter will stand submitted.
judges: CALLAHAN, BUMATAY, Bolton